IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**NATHANIEL F.,**

      **Plaintiff,**

                                  Civil Action 2:20-cv-5364
                                  Magistrate Judge Elizabeth P. Deavers

      **v.**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Nathaniel F., brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Supplemental Security Income benefits ("SSI"). This matter is before the Court for disposition based upon the parties' full consent (ECF Nos. 4, 9), and for consideration of Plaintiff's Statement of Errors (ECF No. 19), the Commissioner's Memorandum in Opposition (ECF No. 24), and the administrative record (ECF No. 14). Plaintiff did not file a reply. For the reasons that follow, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

**I.**    **BACKGROUND**

Plaintiff filed his application for SSI on June 16, 2017, alleging that he has been disabled since May 31, 2014, due to rheumatoid arthritis, irregular heartbeat, chronic sinusitis, hiatal hernia, GERD, fatty liver disease, mood disorder, seizures, chronic pain, calcinosis, kidney stones, and Sjögren's. (R. at 309-14, 344.) Plaintiff's application was denied initially in November 2017 and upon reconsideration in March 2018. (R. at 179-226.) Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (R. at 236.) ALJ Deborah E. Ellis

held a video hearing on October 15, 2019, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 46-86.) A vocational expert ("VE") also testified. (*Id.*) On January 23, 2020, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 14-45.) On September 13, 2020, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action. (ECF. No. 1).

## II. RELEVANT RECORD EVIDENCE

### A. Relevant Statements to the Agency and Hearing Testimony

The ALJ summarized Plaintiff's statements to the agency and relevant hearing testimony:

> In a function report completed with help from his mother, Jennifer Walters, [Plaintiff] alleges problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, remembering, completing tasks, concentrating, understanding, following instructions, using his hands, and getting along with others (5E/7). He reports he can lift 5 to 10 pounds, walk slowly for 15 minutes or a half mile, and stand for 15-30 minutes (5E/2; 5E/7; Hearing Testimony). He alleges problems with his sleep at night due to pain and physical problems performing his personal care (5E/3). He testified that he was only getting 3 to 4 hours of sleep per night. He states he cannot go out of the house alone due to panic attacks, anxiety, and the need for help if his pain worsens (5E/5). [Plaintiff] reports he has been using a splint since 2012 (5E/8). He alleges side effects from his medication (5E/9). [Plaintiff] reports that he has high pain several days a month, during which he cannot do anything but stay at home and lay down or sit (Hearing Testimony).

(R. at 27.)

> In addition, [Plaintiff]'s statements indicated he is able to do some chores around the house, prepare simple meals, help take care of pet cats, watch Netflix, play games, play video games, go online, go shopping, and keep up with current events (5E; Hearing Testimony). He reported he was able to go to the store without issues in March 2019 (35F/4). He was sleeping about eight hours a night at a visit on

> September 25, 2019 (48F/14). He has not reported significant side effects from his current mental health medications to his providers (*e.g.* 35F/6; 48F/9; 48F/16).

(R. at 31-32.)

**B. Relevant Medical Records**

The ALJ summarized the relevant medical records concerning Plaintiff's mental symptoms as follows:

> [Plaintiff]'s mental symptoms related to his depression, anxiety, and trauma related disorders have been effectively treated with medications, counseling, psychiatric medication management, and a reported inpatient treatment (e.g. 8F; 10F; 14F; 27F; 35F; 48F). [Plaintiff] has been documented with occasional mental status abnormalities, such as anxious and/or depressed mood, agitated behavior, worries about the future, flat affect, and some difficulty with focus (8F; 14F; 27F; 36F; 40F; 48F). However, he more typically has been noted as alert, oriented, and well-groomed, with appropriate/normal mood and affect and/or an affect that was congruent with mood, appropriate dress, good eye contact, cooperative behavior, normal psychomotor activity, normal speech, logical thought process, normal thought content, no gross behavioral abnormalities, normal cognition, normal insight, good judgment, good memory for recent and past events, and with denial of homicidal or suicidal ideas or intentions (4F; 6F; 8F; 9F; 10F; 11F; 12F; 13F; 14F; 15F; 25F; 26F, 30F; 35F; 36F; 48F).
>
> A mental status assessment on September 20, 2016, noted [Plaintiff] with preoccupied thought process, overabundance of ideas, rambling thoughts, concrete thinking, remote memory impairment, mildly impaired concentration, little to no insight, and diminished social judgment, but also found he was well groomed, cooperative, with normal speech, full orientation, appropriate affect, calm motor activity, and normal mood (27F/17). It is unclear if he was taking mental health medications at that time, as the facility documented that he was not started on a mental health medication through their program until October 14, 2016 (27F/19). He noted that this medication (Effexor) was working "really well" at his November 11, 2016, follow up (27F/21). [Plaintiff] presented to the emergency department on July 23, 2017, expressing suicidal ideation, and was noted with tearfulness, verbal forcefulness, and with an anxious mood (14F/217; 14F/228). However, he was oriented to person, place, and time; had normal behavior; and had normal cognition and memory (14F/217). He reported that he had not seen his counselor since May 2017 and was unsure if he was still active at her agency (14F/236). He was apparently discharged into an inpatient program, and was reportedly there for three

days (e.g. 8F/8; 10F/11; 14F/220-221). He subsequently established mental health care with Access Ohio West (10F).

A psychiatric progress note on March 6, 2018, documented [Plaintiff] with easily distracted attention, impaired concentration, intense eye contact, restless psychomotor activity, pressured speech, anxious and frustrated mood, abnormal affect, tangential thought process, preoccupied thought content, limited insight and judgment, and impaired short and long-term memory (17F/2). However, he was oriented and alert, with cooperative behavior, and denial of suicidal and homicidal ideations (17F/2). His medications were adjusted, including an addition of a medication for nightmares and sleep (17F/3). At neurological consults on May 17, 2018, and January 15, 2019, [Plaintiff] was noted as awake and alert, well groomed, oriented to person, place, and time, with normal attention, normal fund of knowledge, fluent speech, and the ability to follow commands (20F/10; 50F/9).

[Plaintiff]'s mental status examinations with Access Ohio West from February 27, 2019, through October 9, 2019, occasionally documented anxious or irritable mood and some inability to be attentive, but more typically noted he was alert, oriented, well dressed, and well groomed, with no signs of attentional difficulties, cooperative behavior, good eye contact, normal psychomotor activity, normal speech, euthymic and calm mood, normal affect, logical thought process, normal thought content, denial of suicidal or homicidal thoughts, and normal cognition (35F/4; 35F/6; 48F). At his June 5, 2019, visit, he reported that he had "been more med compliant recently" and had not been forgetting his medications (48F/5).

Per the evidence summarized in detail above, [Plaintiff]'s statements concerning the intensity, persistence, and limiting effects of his mental symptoms are not entirely consistent with the medical evidence and other evidence in the record. The evidence suggests that [Plaintiff] has been noncompliant with his prescribed medications at times, as he reported in June 2019 that he had been "more med compliant recently" (48F/5). He had stopped attending counseling for several months prior to his July 2017 emergency room and brief inpatient stay for exacerbation of his mental symptoms (14F/236). Despite some noncompliance, and though [Plaintiff] has been documented with some intermittent mental status abnormalities as detailed above, the overall medical evidence has found him alert, oriented, and well-groomed, with appropriate/normal mood and affect and/or an affect that was congruent with mood, appropriate dress, good eye contact, cooperative behavior, normal psychomotor activity, normal speech, logical thought process, normal thought content, no gross behavioral abnormalities, normal cognition, normal insight, good judgment, good memory for recent and past events, and with denial of homicidal or suicidal ideas or intentions (4F; 6F; 8F; 9F; 10F; 11F; 12F; 13F; 14F; 15F; 25F; 26F, 30F; 35F; 36F; 48F). Despite his allegations of frequent panic attacks, no treating source has observed one of these episodes. He

4

> has not required frequent emergency room treatment for his mental symptoms, and the evidence suggests that he only had one brief (three day) inpatient hospitalization during the period at issue (8F/8; 10F/11; 14F/217; 14F/220-221; 14F/228).

(R. at 30-31.)

The ALJ weighed the medical source opinions of record as to Plaintiff's mental health impairments as follows:

> On November 21, 2017, and March 15, 2018, respectively, state agency medical consultants, Jennifer Swain, Psy.D., and Aracelis Rivera, Psy.D., reviewed [Plaintiff]'s file, and found that he had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing oneself (1A/11; 3A/10). Dr. Swain found [Plaintiff] retained sufficient mental capacity to carry out one to two-step commands with adequate persistence and pace; could interact with others superficially; and could adapt to a static setting without frequent changes (1A/15-16). Dr. Rivera found that [Plaintiff] might have limitations with handling detailed tasks but could understand, remember, and carry out simple routine tasks; was able to sustain simple routine tasks; could occasionally and superficially interact with coworkers, supervisors, and the general public, and could sustain a work environment that involved changes, but the changes should be easily and readily explained in advance (3A/14-16). These opinions are mostly persuasive, as they are mostly consistent with and supportable by the overall evidence contained in the file, including [Plaintiff]'s intermittent mental status abnormalities as detailed above, yet frequent documentation as alert, oriented, and well-groomed, with appropriate/normal mood and affect and/or an affect that was congruent with mood, appropriate dress, good eye contact, cooperative behavior, normal psychomotor activity, normal speech, logical thought process, normal thought content, no gross behavioral abnormalities, normal cognition, normal insight, good judgment, good memory for recent and past events, and with denial of homicidal or suicidal ideas or intentions (4F; 6F; 8F; 9F; 10F; 11F; 12F; 13F; 14F; 15F; 25F; 26F, 30F; 35F; 36F; 48F). These opinions are also mostly consistent with and supportable by the lack of observed panic attacks by any medical source, lack of frequent emergency room treatment for his mental symptoms, and only one brief (three day) inpatient hospitalization during the period at issue (8F/8; 10F/11; 14F/217; 14F/220-221; 14F/228). These opinions are also mostly persuasive as they are based on the consultants' specialties and programmatic knowledge. However, the undersigned has arrived at slightly different conclusions in the assessment of the "B paragraph" criteria, as detailed above.

5

(R. at 32-33.)

> On November 28, 2018, Sreeramulu Vaka, M.D., of Access Ohio Behavioral Health, completed a questionnaire regarding [Plaintiff] (24F). This source assessed [Plaintiff] with marked to extreme limitations in multiple areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (24F). On June 5, 2019, Melissa J. Honeycutt, CNP, also of Access Ohio Behavioral Health, completed a questionnaire regarding [Plaintiff] (37F). She assessed [Plaintiff] with marked to extreme limitations in several areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (37F).
>
> Despite these sources' specialties and apparent relationship with [Plaintiff], these opinions are not persuasive, as they are not consistent with and supportable by the overall evidence of record, which has documented [Plaintiff] with intermittent mental status abnormalities, but has also often found him alert, oriented, and well-groomed, with appropriate/normal mood and affect and/or an affect that was congruent with mood, appropriate dress, good eye contact, cooperative behavior, normal psychomotor activity, normal speech, logical thought process, normal thought content, no gross behavioral abnormalities, normal cognition, normal insight, good judgment, good memory for recent and past events, and with denial of homicidal or suicidal ideas or intentions (4F; 6F; 8F; 9F; 10F; 11F; 12F; 13F; 14F; 15F; 25F; 26F, 30F; 35F; 36F; 48F). The undersigned notes that the record does not appear to include specific treatment notes from these sources, aside from some handwritten, nearly illegible, visit records that appear to be signed by Dr. Vaka (23F/7-12). However, available records from Access Ohio Behavioral Health are simply not consistent with the opinions offered. Specifically, reports from early 2019 included findings such as documenting [Plaintiff] as well dressed, well groomed, with good sleep, good appetite, cooperative behavior, oriented times three, with panic attacks "not present", anxiousness "not present", and depressed mood "not present", good eye contact, normal speech, euthymic and calm mood, appropriate affect, logical thought process, and normal cognition (35F/4; 35F/6). A visit from June 5, 2019, the same date as the questionnaire completed by Nurse Honeycutt, noted that [Plaintiff] reported his anxiety symptoms were manageable and he had been sleeping well (48F/5). The mental status examination found him well dressed and groomed, oriented, alert, cooperative, with good eye contact, normal psychomotor activity, normal speech, euthymic and calm mood, appropriate affect, logical thought process, normal thought content, normal cognition, and with denial of suicidal or homicidal thoughts (48F/5). Though the subsequent 2019 treatment notes documented a few abnormalities, such as irritable and anxious mood, as well as one visit where he was unable to be attentive, the rest of his mental

status examinations were normal (48F/6-16). For these reasons, the opinions from Dr. Vaka and Nurse Honeycutt are not persuasive.

In as much as the letter from Nurse Honeycutt and John Johnson, M.D., dated October 9, 2019, contains opinions that are not statements on issues reserved to the commissioner, (e.g. "only leaves him home to attend healthcare appointments"; "experiences a panic attack at least once daily"), these opinions are not persuasive, as they are not supportable by and consistent with the overall evidence of record (48F/1-2). As discussed above, though the evidence documented [Plaintiff] with intermittent mental status abnormalities, he has often been found alert, oriented, and well-groomed, with appropriate/normal mood and affect and/or an affect that was congruent with mood, appropriate dress, good eye contact, cooperative behavior, normal psychomotor activity, normal speech, logical thought process, normal thought content, no gross behavioral abnormalities, normal cognition, normal insight, good judgment, good memory for recent and past events, and with denial of homicidal or suicidal ideas or intentions (4F; 6F; 8F; 9F; 10F; 11F; 12F; 13F; 14F; 15F; 25F; 26F; 30F; 35F; 36F; 48F). He was able to go golfing in August 2018 (30F/16). He reported he was able to go to the store without issues in March 2019 (35F/4). As discussed previously, no medical provider has observed him having a panic attack and he has not sought treatment in the emergency room for these reported attacks.

(R. at 34-35.)

### III. ADMINISTRATIVE DECISION

On January 23, 2010, the ALJ issued her decision. (R. at 14-45.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

gainful activity since June 16, 2017, the application date. (R. at 20.) The ALJ found that Plaintiff has the severe impairments of: rheumatoid arthritis, chronic pain disorder, osteoarthritis, depression, anxiety, and trauma related disorders. (Id.) She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC"),[2] in pertinent part, as follows:

> [Plaintiff] can do no commercial driving. [Plaintiff] is capable of simple and routine work, but not detailed work. He would do best in a work environment where any changes are readily explained in advance. He can occasionally and superficially interact with coworkers, supervisors, and the public. He would be absent from work once a month and off task up to 10 percent of the workday.

(R. at 26-27.)

At step four of the sequential process, the ALJ determined that Plaintiff is unable to perform his past relevant work as a freight clerk, construction laborer or audio-visual installation technician. (R. at 36.) Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (R. at 37.) She

---

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] Because Plaintiff's challenge only involves his mental impairments, the Court's discussion and analysis are limited to the same.

8

therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since June 16, 2017, the date the application was filed. (*Id.*)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff presents a single statement of error: The ALJ failed to properly evaluate the opinions from his mental health providers, Sreeramulu Vaka, M.D., Melissa Honeycutt, CNP, and John Johnson, M.D. (ECF No. 19.) Within this contention of error, Plaintiff appears to make three arguments. First, Plaintiff argues that the ALJ misread the record in failing to recognize that, despite his depression diagnosis, anxiety and PTSD are his primary mental health concerns. Plaintiff further asserts that the ALJ's "selective parsing of the record" led her to conclude that the opinions of Drs. Vaka and Johnson and Ms. Honeycutt were inconsistent with, and not supported by, the overall record. (*Id.* at 24.) Finally, in contending that had the ALJ credited the opinions of Dr. Vaka or Ms. Honeycutt rather than relied on the opinions of the State Agency reviewing psychologists, "the result here would have been different," Plaintiff implicitly argues that the RFC is not supported by substantial evidence. (*Id.* at 25.) The Court finds no error in the ALJ's evaluation of the mental health evidence. Rather, the ALJ properly evaluated this evidence, and her evaluation, and by extension her formulation of the RFC, are supported by substantial evidence.

A claimant's RFC assessment must be based on all the relevant evidence in his or her case file. *Id*. The governing regulations[3] describe five different categories of evidence: (1)

---

[3] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 416.913(a), 416.920c (2017).

objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)-(5).  With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).  Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." § 416.920c(c)(1)–(5).  Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. § 416.920c(b)(2).  Although an ALJ may discuss how she or he evaluated the other factors, she or he is not generally required to do so. *Id*.  If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [she or he] considered the other most persuasive factors . . . . . " § 416.920c(b)(3).

In addition, when a medical source provides multiple opinions, the ALJ need not articulate how she or he evaluated each medical opinion individually. § 416.920c(b)(1). Instead, the ALJ must "articulate how [she or he] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id.*

Initially, Plaintiff's argument that the ALJ misread the record mischaracterizes the ALJ's decision. The ALJ found that Plaintiff's severe impairments included depression, anxiety, and trauma related disorders. (R. at 20.) Accordingly, the Court finds no error to the extent that Plaintiff claims the ALJ did not cite specifically to Plaintiff's PTSD diagnosis or any specific PTSD symptoms. There is no requirement that the ALJ discuss each piece of evidence or limitation considered. *Conner v. Comm'r*, 658 F. App'x 248, 254 (6th Cir. 2016). "[A]n ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004).

Moreover, the ALJ repeatedly acknowledged Plaintiff's "intermittent mental status abnormalities" as a whole. (*See, e.g*, R. at 31; 32; 34; 35.) In doing so, the ALJ specifically noted that Plaintiff had been "documented with … anxious and/or depressed mood" (R. at 30 citing R. at 543-614; 846-1188; 1370-1454; 1632-1634; 1702-1769; 194-1964); he had "presented to the emergency department on July 23, 2017, expressing suicidal ideation … and an anxious mood" (*Id*. citing R. at 1062; 1073); he had spent three days in an inpatient program (R. at 31 citing R. at 550; 705; 1065-1066); in March 2018 he was noted to have an "anxious and frustrated mood" (*Id*. citing R. at 1238); mental status examinations from February 2019 through October 2019 "occasionally documented anxious or irritable mood" (*Id.* citing R. at 1606; 1608; 1948-1964.) She also acknowledged Plaintiff's testimony that he was getting only 3 to 4 hours sleep per night and that he could not leave his house due to panic attacks. (R. at 27.) Additionally, the ALJ cited Plaintiff's treatment for nightmares and sleep. (R. at 31.) Plaintiff's argument on this point wholly ignores much of the plain language of the ALJ's discussion.

Additionally, the mere diagnoses of PTSD or anxiety say nothing about symptom severity or functional limitations. *See Chassar v. Comm'r of Soc. Sec.,* No. 2:17-CV-14144, 2019 WL 2035596, at *4 (E.D. Mich. Feb. 15, 2019), *report and recommendation adopted*, No. 17-CV-14114, 2019 WL 1236451 (E.D. Mich. Mar. 18, 2019) (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) ("[I]t is well established that a diagnosis alone does not indicate any functional limitations caused by an impairment.")); *see also Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."). Accordingly, in discussing Plaintiff's mental impairments and formulating the RFC, the ALJ reasonably focused on Plaintiff's functional abilities rather than on any specific mental health diagnosis.

To this end, the ALJ cited numerous instances where Plaintiff presented as "alert, oriented and well-groomed, with appropriate/normal mood and affect and/or an affect that was congruent with mood, appropriate dress, good eye contact, cooperative behavior, normal psychomotor activity, normal thought process, normal thought content, no gross behavioral abnormalities, normal cognition, normal insight, good judgment, good memory for recent and past events, and with denial of homicidal or suicidal ideas or intentions." (*See, e.g.,* R. at 30, 34 citing R. at 438-460; 505-519; 543-614; 615-694; 695-718; 719-759; 760-790; 791-845; 846-1188; 1189-1226; 1330-1346; 1347-1369; 1483-1499; 1603-1631; 1632-1634; 1948-1964.) Beyond this, the ALJ reasonably considered Plaintiff's activities of daily living including his ability to do household chores, prepare simple meals, help take care of pets, watch Netflix, watch video games, shop and keep up with current events. (R. at 31-32.) The ALJ also noted Plaintiff's self-reports indicating that, while medication compliant, his anxiety symptoms were

manageable and he had been sleeping well. Finally, the ALJ observed that, despite his claims of daily panic attacks, no medical provider had ever witnessed these attacks and he had not sought frequent emergency treatment for his mental health symptoms. (R. at 31, 32.)

To counter the above, Plaintiff accuses the ALJ of "cherry-picking" the record. To be sure, "'[i]n rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.'" *Fleischer v. Comm'r*, 774 F. Supp. 2d 875, 880 (6th Cir. 2011). Indeed, courts are not hesitant to remand where an ALJ selectively includes only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *see also Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes."). But, as set forth above, that is not what happened here. Accordingly, Plaintiff's assertion that the ALJ presented only a "rosy depiction" (ECF No. 19 at 23) is not a fair portrayal of the ALJ's analysis.

As further support for his position, Plaintiff points to particular evidence he believes the ALJ disregarded. This effort is not persuasive because "[t]he problem with a cherry-picking argument is that it runs both ways." *Colvin v. Comm'r of Soc. Sec.*, No. 5:18 CV 1249, 2019 WL 3741020, at *14 (N.D. Ohio May 8, 2019). Plaintiff also attempts to explain away certain evidence cited by the ALJ, including, in part, evidence of his being "alert, oriented and well-

groomed." (ECF No. 19 at 24.) For example, Plaintiff asserts that "a person suffering from severe anxiety, panic attacks, and PTSD would not be expected to appear to be disoriented, as a lack of orientation … would be exhibiting symptoms consistent with a psychotic disorder, not anxiety. (*Id*.) Further, Plaintiff contends that "while people who suffer from severe depression may not attend to their personal grooming or be alert, those with anxiety would not be expected to display those traits." (*Id*. at 24-25.) This effort fares no better because Plaintiff offers nothing more than his lay opinion unsupported by any medical evidence of record. Moreover, there is no question that crediting Plaintiff's argument here would require the Court to re-weigh evidence, something it simply cannot do. *Colvin*, 2019 WL 3741020, at *14.

In sum, the Court finds that the ALJ reasonably evaluated Plaintiff's mental limitations and did not impermissibly parse the record when evaluating the opinions of Drs. Varka and Johnson and Ms. Honeycutt. The ALJ was required to explain how she considered the consistency and supportability of these opinions with the rest of the evidence and she did so. *See* 20 C.F.R. § 404.1520c(b)(2). This is sufficient to build an accurate and logical bridge between the evidence and the result. As noted above, if substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027 1035 (6th Cir. 1994). While Plaintiff may disagree with the ALJ, the ALJ's findings in this case were well within the zone of reasonable choices. *See McClanahan v. Comm'r of* Soc. Sec., 474 F.3d 830, 833 (6th Cir. 2006). Accordingly, there is no merit to Plaintiff's statement of error.[4]

---

[4] The Court notes Plaintiff's "aside," set forth in a footnote (ECF No. 19 at n.3) suggesting that the ALJ reverse-formulated the RFC to align with the vocational testimony. The Court need not address this matter. "Issues adverted to in perfunctory manner, unaccompanied by some effort

VI. CONCLUSION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, Plaintiff's Statement of Errors (ECF No. 19) is **OVERRULED** and the Commissioner's decision is **AFFIRMED**. The Clerk is **DIRECTED** to enter judgment in favor of Defendant.

IT IS SO ORDERED.


**February 11, 2022**                                    *s/ Elizabeth A. Preston Deavers*
                                                        **Elizabeth A. Preston Deavers**
                                                        **United States Magistrate Judge**

---

at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *Id.*